In re Marriage of Jones 513-0213. Ms. Renshaw, you may proceed. May it please the Court, Counsel, I'm Yael Renshaw, representing the respondent appellant, Christy Jones. This appeal is from a post-dissolution of marriage order that divided a particular asset, namely, if the account gets involved in the securities. That was a two-part asset. Part of it was stock and part of it was cash. The part that we're appealing is the cash distribution. This case has a lengthy history. The dissolution was entered in September of 2008. It was a post-trial motion and that order was entered in April of 2009. Both parties appealed and this Court entered a Rule 23 order in March of 2011, affirming the trial court. Now, post-trial, post-appeal, several motions were filed to enforce the judgment. And as part of these, the Court entered an order distributing this asset, the securities account. Now, the Court, when it distributed this, it valued it not of the date of the dissolution but of the date of the distribution. It distributed it in 2013. Now, the difference in the cash part of the account, when you consider there were a lot of set-offs, and I don't think it's really necessary to go into those set-offs because those aren't being contested. Things like after the dissolution but before this, each party was allowed to withdraw certain amounts from that, and that's not in dispute. But there are certain things with this account that are in dispute. And what happened between 2008 and 2009, when the account was frozen, Petitioner had access to that account and withdrew substantial amounts. So at the end of the day here, when the account was distributed, the difference, it was down to about $160,000, where as of the date of the distribution, it was somewhere between $315,000 and $400,000. Now, when I entered this case, which was just pretty recently, it seemed extremely confusing to me because parties did have a lot of assets and there were all these motions going back and forth. But when I really reviewed everything and came down to the issue, it's quite simple and straightforward. Was the court required to value the asset at the time, on the date of the dissolution, or when some other date it shows? And the case law is clear that the court in a dissolution is supposed to value the assets as of the date of the dissolution. The Supreme Court in Mathis made that very clear. And the reason behind it is because they said judicial economy, it discouraged parties from keeping on the litigation, and it uniformity. Ms. Renshaw, let me ask you a question. In the order that was entered in January of 2013, the judge says that the court in 2008 made every effort based upon the testimony to make the distribution as fair as possible and adheres to that philosophy. And he indicates that he wants it distributed and should be held to the same 2008 evaluation. So at least according to what he says in his order, he is valuing the property as of the date of the dissolution. Well, he did say that was his intent. However, that wasn't the value when he distributed that asset. But see, I can't tell from his order what value he actually used. So did he use the $400,000 or the $150,000? The $150,000, because it was that date that he distributed. So he did not comply with the Mathis rationale and holding. And that is the simple issue, and the answer is quite simple. And when the respondent's attorney tried to introduce evidence showing these things, he wouldn't accept that. And so we are asking the court to remand this case, to reverse the remand, direct the court to follow the Mathis decision. What about the Shinnelli case that's cited in Mathis with approval, where the Shinnelli court says, we look at all the assets as the date of the dissolution, and then we're going to divide percentage-wise? It seems that that's what the court was looking at here. Well, my reading of that case is that that was done at the same time, and that this is so piecemeal, this case. This is bifurcated, you think? Yeah. The one that we're considering. Yes, yes. And you think bifurcation makes a difference? I do, I do. And Mathis does stress the fact that one of the reasons it should be done this way is to avoid the piecemeal litigation. Here we have a lot of piecemeal. So we're asking the court to remand this case. What about the hearings that were held during the pendency of this, where the court did give some money to the parties? I think there was a joint fund that was created and things of that nature. Do you think the court was, during the pendency of this time, trying to make some equitable arrangements in light of the falling assets? I think the court was trying to be reasonable. However, this all could have been avoided had it distributed it initially, but because of the appeals and all that, it couldn't really do that. But those things that it allowed the parties to have money while this all was going on is a little bit different from the issue that I'm addressing here. So we shouldn't take into account the fact that the parties may have gotten some equitable relief during the pendency of this appeal? Well, that's not in dispute, those equitable amounts. The only thing that's in dispute is this cash account, and that's the thing that we're hearing. Thank you. Thank you. Okay, Mr. Webster. It is. Good morning. Good morning. My name is John Webster, and I'm from Albemarle, and I represent Dr. Richard Jones. And I've been involved in this case from day one. It's now eight years old. This is the second appeal, which was initiated by Mrs. Jones, and then there was a cross-appeal that we filed. And the court's already brought up the Schenelle case, and that's a case we think fits here very well because there is over four years away from the time the court made the decision in this case, the buying of property, until the judge entered an order in November of 2013. So now we're out in 2012, I believe. I'm sorry. So now we're out five years, and this particular account is the only major account that remains undivided. Everything else has been divided except for a few small accounts that the court will address when this matter is finalized. The truth of the matter is that Mrs. Jones has benefited greatly by the fact that this account has not been divided because the account is approaching a value of a million dollars now. And back when the case was decided, it was significantly less than that. It then went down by a third, and now it's come back by gangbusters. The Schenelle case points out that it's going to be fundamentally unfair to go back and use the values that were actually in existence in 2008. What the court did in Schenelle and what the court did in this case was say that's going to create a problem. Do we have to go back and reevaluate all the other accounts and make sure that I can continue to strive to divide the marital assets 50-50? No, I don't think that's going to be the way to do it. The way to do it would be to stick with the percentages, and that's what Schenelle did, and divide the property when it does get divided 50-50. If you go through the common law record, and we filed a supplemental record of orders and proceedings that took place after the original notice of appeal was filed, about 50 pages, but there's an order that's very important in that 50 pages, and it's a July of 2009 order, and that's when the court, in lieu of an appeal bond for the initial appeal, froze the assets rather than get a conventional appeal bond. And those assets were frozen until just recently, within the last year or so, except for this one account, the Dr. Jones individual investment account. That's the only major account that's undivided. And the court said, you know, this needs to be divided 50-50, taking into account any offsets. And there were a number of offsets, and there were many distributions during this eight-year period so that the parties would have the funds to live on, Dr. Jones being retired, Mrs. Jones not employed. And during that time, it's tedious, but in my brief, there's about 12 pages just addressing the eight different hearings that took place between the time that Judge made the decision in the all remaining issues and today. All evidentiary hearings, witnesses called in all those hearings, Judge made a lot of orders, and what you see replete throughout these orders is his attempt to be equitable and split these substantial assets 50-50. And what Mrs. Jones is asking for is for you to go back and make some kind of determination as to what cash was there back in 19 – I'm sorry, in 2008 and 2009 when the case ended in this court. And as the judge pointed out, there's been all this time to arrive, and there's been significant change in this account. And the only fair way to divide it, whatever cash is in there now should be divided 50-50. Whatever securities are in that account should be divided 50-50. But along the way, the court, after having a full evidentiary hearing back in 2009, after the notice of appeals was filed, there was a petition for room to show cause. And Mrs. Jones was complaining that Dr. Jones had access to this investment account, and he had taken certain monies from that account. And there was a full hearing, exhibits, everything, and the judge found that Dr. Jones was – what his actions were were not willful, were not dissipation. He had used that account. It was like his checking account and always had been. And $20,000 or so of his non-marital Social Security benefits went into that account. He invested money. He paid maintenance from that account to Mrs. Jones, paid for her automobile and medical insurance during that time, maintained the marital home, and did some renovations to the marital home, all of which benefited Mrs. Jones. The marital home, that asset has now been divided between the parties. So that's one less asset. As I said, there's not too many others, only this one major account. So why – excuse me – why does Mrs. Jones believe that she is going to suffer if the account has grown so much and it's 50-50? She's not going to suffer. I mean, she already has millions of dollars from this divorce because the judge has split everything down the middle and gave her an extension in maintenance and said this is to help if there's any inequity because of what Dr. Jones did during that 10-month period that he had access to the account before it got frozen. That has been remedied by this additional maintenance that I'm giving her. Because the maintenance that initially was supposed to terminate six months after the court made its original decision, but that was extended for another eight months and that was another $24,000 that Mrs. Jones received. Not only that, but this investment account for the last eight years, this case has been pending. It's insecurities. There's dividends. There's interest and so forth. Dr. Jones has paid all the taxes on this account from day one to the present. She's benefited greatly from that. How do you explain that the date on March 13, 2013 was $160,000 plus, but the date of dissolution was $417,000 plus? I mean, I'm hearing you now say that this account is much more than $160,000. Oh, sure. Absolutely. Absolutely. One of the other things, Judge, that I think is important, an extra consideration for Mrs. Jones, was that in 2008, the IRS had a movement, a moratorium on mandatory required distributions from IRA accounts. And Dr. Jones being well into his 70s, and he could have taken distributions that year, but he didn't. And that also benefited Mrs. Jones because the money stayed invested longer and got larger, and then that IRA account was divided later 50-50 between the two parties. Does that include the $29,000 limit? No, that does not include the $29,000. When the IRA was divided, the parties divided approximately $4 million at that time. The $29,000 that we're asking the court to reverse because it came out of nowhere. I mean, it just came out of nowhere in the last hearing. The judge just said, I'm going to give her $29,000 after he had, on numerous occasions, denied her any offsets because of her complaint that he had, Dr. Jones had abused his investment account during that 10-month period that it wasn't affordable. But that was maintenance he was paying. Yeah, he was paying for it. So in effect, she was paying her own maintenance. She, I guess the way I look at it is that, to be fair, she was paying half of it. So we would reverse the math. Well, he gave her more maintenance and that should offset it, but you know. But you're not in agreement with that. Was I not? You're not in agreement with that either. You know, it wouldn't be the end of the world. I mean, when you think of all this money, what's $29,000? Counsel says the offset and the amount of $29,000 was not an award of additional maintenance. It says that, Your Honor, but I would respectfully submit that it was the exact amount of the maintenance that had been paid previously. And now we add another $29,000 to it. So which would make the court think, well, maybe the judge was thinking that. Maybe I should give her that because one can make a pretty good argument that she was paying at least half of her maintenance, you know, in this manner. Okay. But the point being that over and over again, there were other significant benefits that she received because when there were mandatory required distributions from the IRA in 2009, 2010, approximately $300,000 worth, the judge ordered Dr. Jones to pay all taxes on that. But she got that money S and S's tax-free. So any inequity because of what happened during that 10 months from the decision until the assets were frozen, the judge has said over and over again, she's been taken care of. What is the difference then if the money now is more, then why wouldn't you agree to value the account at $417,000? We don't care when it gets valued as long as the account gets divided 50-50 whenever that takes place. I see. Because it's a moving target. As a percentage. And not to do a 50-50 would open up everything else. Exactly. Okay. That's why we think that Shanelle hits the mark here. Normally, data disclosure is when you should value the asset. But when years go by and the parties don't have control of the accounts and they change, then the only fair way to do it would be to split it 50-50. And she should be very pleased that it's gone up. Any other questions, Your Honor? No, thank you very much. Thank you very much. Ms. Renshaw, do you have anything else? I guess I'd like to know why aren't you pleased? Well, it's my understanding that what he's talking about is the entire account being worth that, the security part and the cash. Am I wrong on that? I'm talking about both, cash and the security. They both fluctuate. So I'm dealing with the cash issue, which really hasn't grown, unfortunately. If that were true, I don't think I'd be here. But as for all the other benefits that Mr. Webster was discussing, you know, both parties receive a lot. So when you go back and try and say, well, oh, so she doesn't need this, it's not meaningful. Well, that's why I say you don't include those when you discuss this issue. And, again, narrowing it to a specific cash account is what this appeal is about. Okay, well, just to be clear, I can't find in this order the number that was to be used for the division of 50-50. I'm sorry, what number? I can't find the cash number, whether it's the 417 or the 165-77. I don't think the judge put an amount in his order, and he was just saying, as of this date, whatever was in the cash account. So where he says the accounts at this time are subject to distribution, that's using the date of the order, or the date of March 13th? Correct. And that is what your issue is, is the 160 versus the 417. And the respondent's counsel did try and get amounts in, and the court wouldn't allow her to introduce these exhibits. So I do believe there's some attached to her motion, an exhibit of what was in the account when she filed the motion. And the difference, the vast difference, relates to monies withdrawn, and there isn't any fluctuation, any market fluctuation, because it's just an interest rate that's pretty nominal. Yeah, the security portion certainly was subject to fluctuation. Thank you. Thank you. Okay, the matter will be taken under advisement, and the committee will issue or quit. Thank you very much.